# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# NORTHERN DIVISION

D<small>E</small>MARIO CANNON                                                                                    PLAINTIFF
#61175

v.                                          3:20-cv-00313-DPM-JJV

BOWERS, *et al*.                                                                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen days from the date of the findings and recommendations. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

### DISPOSITION

**I.    INTRODUCTION**

DeMario Cannon ("Plaintiff"), incarcerated at the Craighead County Detention Center, filed this action *pro se* pursuant to 42 U.S.C. § 1983. Plaintiff sued Craighead County Detention Center Administrator Keith Bowers and Administrative Assistant Toni Raymond (collectively

"Defendants") in their personal and official capacities. (Doc. Nos. 2, 3.) Plaintiff alleges that on September 18, 2020, he received "privileged mail" from Arkansas Child Enforcement (Doc. No. 3 at 3.) An Officer Raines—not a party to this lawsuit—delivered the mail to Plaintiff. (*Id*.) Inside the envelope was "the remainder of a stimulus check, after deduction of child support." (*Id*.) Roughly five hours after Officer Raines delivered the envelope to Plaintiff, Defendant Raymond directed Officer Niewirowicz—also not a party to this lawsuit—"to take possession of the check." (*Id*. at 4.) Officer Niewirowicz then took the check and placed it with Plaintiff's personal property. (*Id*. at 5.) Plaintiff alleges that at some point between September 18, 2020 and September 23, 2020, Defendant Raymond took the check out of Plaintiff's personal property and "mail[ed] it return to sender to child support enforcement without [Plaintiff's] knowledge and consent." (*Id*. at 9.)

Plaintiff challenges the return of his check on three grounds: (1) violation of Detention Center Policy; (2) violation of American Correctional standards; and (3) the wrongful taking of personal property.

As to Plaintiff's policy arguments, he contends Defendant Bowers, as Jail Administrator, "is responsible for ensuring policies promulgated by Sheriff Marty Boyd are made accessible by tangible posting throughout the inmate housing units, or in the information menu of the inmate kiosk system." (Doc. No. 3 at 4.) Plaintiff asserts no policies were posted regarding the handling of mail and no policies were available on the kiosk system (*Id*.) Plaintiff reasons "[t]hus, . . . both Defendants' behaviors to act outside of written rules (*i.e.* mail) are individual actions . . . ." (*Id*.) Plaintiff further asserts that Defendants have "intentionally hidden the mail policies of CCDC . . . ." Plaintiff also maintains Defendants "were apprised of duties of their office by an in-depth

orientation" but nonetheless acted inconsistent with Detention Center policy and procedure. (*Id.* at 11.)

Plaintiff asserts that "American Correctional Standards require jail and prisoner rights to be equal." (*Id.* at 6.) As such, Plaintiff maintains he has a constitutional right to receive mail. (*Id.* at 7.) Plaintiff explained that for unauthorized mail, "the inmate receives notice of the unauthorized mail, with the reason or explanation why it is incapable to be delivered." (Doc. No. 3 at 7.) Also, "[t]he notice also conveys to the inmate he has so many days to provide postage or it will be destroyed." (*Id.* at 7-8.) He asserts this procedure is applicable to the Detention Center and that Defendants acted outside of the American Correctional standards.

The heart of Plaintiff's Complaint is the taking of his personal property—his check. (*Id.* at 8.) Plaintiff maintains Defendant Raymond unlawfully denied him ownership of his property when he mailed the check back to the Office of Child Support Enforcement. (*Id.* at 9.)

Plaintiff seeks damages and injunctive relief. (Doc. No. 2 at 5-8.)

## II.    SCREENING

The PLRA requires federal courts to screen prisoner complaints seeking relief against a governmental entity, officer, or employee. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that (a) are legally frivolous or malicious; (b) fail to state a claim upon which relief may be granted; or (c) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

An action is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations must be

weighted in favor of Plaintiff.  *Denton v. Hernandez*, 504 U.S. 25, 32 (1992).  "In other words, the § 1915(d) frivolousness determination, frequently made *sua sponte* before the defendant has even been asked to file an answer, cannot serve as a factfinding process for the resolution of disputed facts."  *Id*.  But whether a plaintiff is represented by counsel or is appearing *pro se*, his complaint must allege specific facts sufficient to state a claim.  *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

### III.  PLAINTIFF'S COMPLAINT

As explained below, Plaintiff's Complaint fails to state a claim on which relief may be granted.

#### A.  Official Capacity Claims

Plaintiff's official capacity claims are equivalent of claims against Craighead County.  "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity."  *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010).  To establish municipal liability, a plaintiff must prove that an official municipal policy, deliberately indifferent failure to train or supervise, or unofficial custom caused the constitutional injury.  *Corwin v. City of Independence, Missouri,* 829 F.3d 695, 699 (8th Cir. 2016) (*citing Monnell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 (1978); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)).

Plaintiff does not allege his injury was caused by an official policy or deliberately indifferent failure to train.  (*See* Doc. Nos. 2, 3.)  His official capacity claims presumably arise under custom, then.  *See Kelly v. City of Omaha, Nebraska*, 813 F.3d 1070, 1075-76 (8th Cir. 2016).  A municipality will not be liable for an alleged custom unless a plaintiff can establish the custom is widespread and a policy-making official's "deliberate indifference to or tacit authorization of such conduct . . . after notice to the official[] of that misconduct."  *Id*. (internal

4

citations omitted). Plaintiff complains of one instance of his personal property being confiscated. He did not allege a widespread custom and did not allege deliberate indifference or tacit authorization of conduct. Accordingly, his official capacity claims fail.

### B.     Personal Capacity Claims

Plaintiff brought suit under 42 U.S.C. § 1983. To state a claim for relief under § 1983, the complaint must allege that a person acting under the color of state law deprived the plaintiff of a constitutional or federally-protected statutory right. *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Factual allegations must be sufficient to "raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

#### 1.     Violation of Policy

Plaintiff maintains Defendants violated Detention Center policy. (Doc. No. 3 at 3-6, 10-11.) The failure to follow prison policy without more, however, does not rise to the level of a constitutional violation. *Prow v. Roy*, 717 Fed. Appx. 649, 650 (8th Cir. 2018) (per curiam) (*citing Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) and *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 2003), among others). Plaintiff did not provide any further allegations of fact from which I can conclude any Defendant acted in a way that violated Plaintiff's federally-protected rights. Accordingly, his allegation that Defendants failed to follow policy does not state a claim on which relief may be granted.

### 2.    American Correctional Standards

Plaintiff asserts the Defendants acted outside of American Correctional Association standards. (Doc. No. 3 at 6-8.) "[W]hile the recommendations of [the American Correctional Association] may be instructive in certain cases, they simply do not establish the constitutional minima; rather, they establish goals recommended by the organization in question." *Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979). A violation of the American Correctional Association standards, then, does not necessarily rise to the level of a constitutional violation.

Plaintiff embedded in his argument his constitutional right to receive mail. (Doc. No. 3 at 7.) Interference with inmate mail may violate the right to counsel, the right to access the court, or the freedom of speech—the right to send and receive information and ideas. *See Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977); *Bounds v. Smith*, 430 U.S. 817, 824 (1977); *Kleindienst v. Mandel*, 408 U.S. 753, 763-63 (1972). Here, Plaintiff characterizes his mail as "privileged." The Court of Appeals for the Eighth Circuit has defined privileged mail as "mail to or from an inmate's attorney and identified as such." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1037 (8th Cir. 2012). But the letter was not from an attorney. And Plaintiff has not explained how the letter otherwise was privileged. Rather, Plaintiff specified the letter was from Child Support Enforcement. And there are no allegations that Defendants' actions in any way impeded Plaintiff's access to the courts. As to Plaintiff's right to receive information and ideas, I note the letter was delivered to Plaintiff—apparently without issue. Plaintiff did not allege interference with his mail—incoming or outgoing. Plaintiff was in possession of his mail, including the check, for hours before Officer Niewirowicz took the check per Defendant Raymond's order. Plaintiff's harm arose when Defendant Raymond took the check from Plaintiff's personal property and returned it to the Office of Child Support Enforcement; Plaintiff made no allegations that Defendant Bowers was

personally involved in taking the check. Plaintiff's claims turn on the deprivation of personal property.

### 3.     **Personal Property**

In *Hudson v. Palmer*, the United States Supreme Court held "that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." 468 U.S. 517, 533 (1984). Because Plaintiff alleged Defendant Raymond took his check, the holding of the Supreme Court in *Hudson* is at play.

While Plaintiff alleged Defendant Raymond took his check, Plaintiff also alleged that the taking was the result of Defendant Raymond failing to follow policy. For example, Plaintiff wrote:

- "both defendants behaviors to act outside of written rules (i.e. mail) are individual actions." (Doc. No. 3 at 4);

- "Both defendants . . . have incorporated individual behaviors as a means to skirt the law . . . they were not acting in good faith to a rule/policy/directive/regulation promulgated by Sheriff Marty Boyd. (*Id*. at 5.)

- "Toni Raymond through individual actions/behaviors has intentionally hidden the mail policies of CCDC . . . ." (*Id*. at 6.)

- "CCDC has a policy governing the custody, control and conveyance of [Plaintiff's] property that in more or less terms prohibits the remove of any item of property without the express consent through signed release authorization by [Plaintiff.]" (*Id*. at 9.)

- "[D]efendant Raymond acted individually to remove the check without my permission and consent from property with . . . intent to deny me proper ownership, and without proper notice of the same." (*Id*.)

Plaintiff did not allege Defendant Bowers was personally involved in taking the check or returning the check to sender.

7

"[W]hen state officials deprive an individual of property pursuant to a state procedure or policy without predeprivation process, a § 1983 action [possibly] may be brought regardless of whether there are adequate state postdeprivation remedies . . . ." *Walters v. Wolf*, 660 F.3d 307, 315 (8th Cir. 2011) (internal citations omitted); *see also Mickelson v. County of Ramsey*, 823 F.3d 918, 928 (8th Cir. 2016) (*Walters* does not always foreclose postdeprivation process when deprivation was pursuant to policy). But when the "challenged acts of state officials can be characterized as random and unauthorized," postdeprivation remedies suffice. *Walters*, 660 F.3d at 315 (internal citations omitted). Plaintiff alleged that Defendant Raymond acted "individually" and that his acts fell outside of Detention Center policy. Accordingly, I find that Plaintiff's § 1983 claims cannot proceed further if an adequate postdeprivation remedy exists.

The question, then, is whether Arkansas provides an adequate post-deprivation remedy. Arkansas does. The Court of Appeals for the Eighth Circuit has recognized Arkansas's post-deprivation remedies for inmates asserting the wrongful taking of personal property: conversion and a motion under the Arkansas Rules of Criminal Procedure. *Butler v. Smith*, 208 F.3d 217 (8th Cir. 2000) (unpublished). "Conversion is a common-law tort action for the wrongful possession or disposition of another's property." *Hartness v. Nuckles*, 2015 Ark. 444, 9 (2015) (internal citations omitted). To state a conversion claim, a plaintiff must establish that "the defendant wrongfully committed a distinct act of dominion over the property of another, which is a denial of or is inconsistent with the owner's rights." *Id*. Plaintiff's allegations squarely fall under a claim for conversion. Because Arkansas offers a meaningful post-deprivation remedy, Plaintiff's § 1983 claim for the confiscation of his check fails.

### 4. **Failure to Post Policy**

Woven into his other arguments, Plaintiff alleges that Defendants violated his rights by failing to post policy "throughout the inmate housing units" or in the inmate kiosk system. (Doc. No. 3 at 4, for example.) Plaintiff's allegation has due process implications. *See Moore v. Janing,* 427 F. Supp. 567 (D. Neb. 1976); *White Eagle v. Storie*, 456 F. Supp. 302 (D. Neb. 1978). But Plaintiff has not alleged he was disciplined—that he received sanctions or the denial of privilege—without notice. *See Id.* And he did not allege he never received or never was made aware of Detention Center policy. Rather, he alleges Defendants failed to follow Detention Center policy, which necessarily implies Plaintiff was familiar with the policy. And again, Plaintiff's harm was the taking of his check; Plaintiff has a postdeprivation remedy for the loss of his personal property. Accordingly, under these circumstances, Plaintiff has failed to state a claim in connection with his allegation that Detention Center policy was not posted throughout inmate housing units or in the kiosk system.

IT IS, THEREFORE, RECOMMENDED that:

1. Plaintiff's Complaint (Doc. Nos. 2, 3) be DISMISSED without prejudice for failure to state a claim upon which relief may be granted.

2. Dismissal of this action count as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

---

[1] Title 28 U.S.C. § 1915(g) provides as follows: "In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury."

3.  The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and the accompanying Judgment would not be taken in good faith.

DATED this 13th day of October 2020.

                                              JOE J. VOLPE
                                              UNITED STATES MAGISTRATE JUDGE